# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:13-CV-00254-MOC-DSC

| | |
|---|---|
| CELGARD, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SK INNOVATION CO., LTD., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendant's … Renewed Motion to Dismiss For Lack of Personal Jurisdiction … or, in the Alternative, to Transfer" (document #156), as well as the parties' briefs and exhibits.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that "Defendant's … Renewed Motion to Dismiss For Lack of Personal Jurisdiction … or, in the Alternative, to Transfer" (document #156) be granted, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2013, Plaintiff Celgard LLC ("Celgard") filed its Complaint alleging that Defendant SK Innovation Company, Ltd. ("SKI") induced infringement of the subject patent under 35 U.S.C. § 271(b). Plaintiff alleges that Defendant has induced infringement of its patented separator for lithium ion batteries (United States Patent No. 6,432,586 ("586 patent")).

Accepting the factual allegations of the Amended Complaint as true, Celgard maintains its headquarters as well as a major manufacturing plant in Charlotte. Plaintiff is a developer, manufacturer, and seller of battery separators for lithium ion batteries. These batteries are a component in electronic products, including electric vehicles, laptop computers, and mobile phones.

Defendant SKI is a Korean corporation that competes with Celgard worldwide in the battery separator market. Defendant contends that it lacks any "continuous and systematic" contacts with North Carolina that confer general jurisdiction, discussed infra. Defendant denies conducting any activity related to the accused products in North Carolina or purposefully directing any of its relevant activities here. Defendant concedes that it is subject to personal jurisdiction in the Southern District of New York.

In response to SKI's initial Motion to Dismiss for lack of personal jurisdiction, Celgard asserted that it competes with SKI to be the primary supplier of battery separators to Saft America, Inc. ("Saft"). Saft manufactures lithium ion batteries in the United States. Saft has offices and production facilities in Valdese, North Carolina, within the Western District of North Carolina. Saft's global purchasing director for battery separators works in its Valdese office. That employee is responsible for Saft's supply of separators used in the production of lithium ion batteries. Celgard "infers and believes" that SKI has made offers to sell its accused products to Saft here in the forum state. SKI denies making sales here.

Celgard also contended that SKI manufactures and sells separator materials that are incorporated into lithium ion batteries and sold in consumer electronics products and electric vehicles in North Carolina.

On August 20, 2013, Defendant filed its "Amended Motion to Dismiss … or, in the Alternative, to Transfer [to the Southern District of New York]."

In its Alternative Motion for Jurisdictional Discovery, Plaintiff requested an opportunity to conduct jurisdictional discovery related to:

> (1) SKI's sales, imports, and offers for sale into the Western District of North Carolina, the State of North Carolina, and the U.S. of its Accused Lithium Ion Battery Separators, including through established distribution channels; (2) SKI's contacts with North Carolina; (3) SKI's marketing efforts, including attendance at national trade shows held annually in the U.S., related to its Accused Lithium Ion Battery Separators and incorporating these Battery Separators into established channels of commerce to customers in the Western District of North Carolina, the State of North Carolina, and the U.S.; (4) SKI's U.S. marketing officer physically residing in the United States from 2005 through February 2013 and tasked with marketing, offering to sell, and selling in the Western District of North Carolina, the State of North Carolina, and the U.S. SKI's Accused Lithium Ion Battery Separators and Lithium Ion Batteries; (5) SKI's distribution and marketing of the Accused Lithium Ion Battery Separators through its U.S. and non-U.S. subsidiaries, including through SK Innovation Americas located in Troy, Michigan; (6) SKI's sale of the Battery including the Accused Lithium Ion Battery Separator to a California company for $30,000; (7) SKI's negotiations with the global purchasing director of Saft America, Inc., who communicates with and purchases from SKI the Accused Lithium Ion Battery Separator and does so from Saft America, Inc.'s offices located in the Western District of North Carolina; (8) SKI's manufacture and sale of polymer base film materials that are incorporated into infringing lithium ion battery separators for consumer electronics products sold in the Western District of North Carolina, the State of North Carolina, and the U.S.; (9) Tesla Motors, Inc.'s purchase and testing of electric vehicle batteries incorporating SKI's Accused Lithium Ion Battery Separators, and Tesla's sales or offers for sale of electric vehicles in the Western District of North Carolina, the State of North Carolina, and the U.S.; (10) Kia Motors America, Inc.'s use, sale, and offer for sale in the U.S. of electric drive vehicles incorporating SKI's Accused Lithium Ion Battery Separators; (11) SKI's overall revenues from sales of all products into the Western District of North Carolina, the State of North Carolina, and the U.S.; and (12) SKI's payment of taxes to the U.S. Internal Revenue Service or revenue service of any state or county in the U.S.; (13) SKI's joint venture with Continental, announced while SKI representatives were in the U.S. in January 2012, to make lithium-ion batteries for electric vehicles, some of which will be sold or imported into the U.S.

Document #42 at 6-9.

On October 16, 2013, the undersigned granted Plaintiff's Motion for Jurisdictional Discovery on the topics listed above and recommended that Defendant's Motion to Dismiss be denied without prejudice to renewal following discovery. "Memorandum and Recommendation and Order" (document #62). Discovery has been contentious and is now thankfully concluded. See documents ##73 through 215.

Jurisdictional discovery has revealed precious little, if any, contacts between SKI and North Carolina. Contrary to Celgard's earlier assertions, there is no evidence that SKI offered its accused products to Saft. There is no evidence that SKI has solicited any other sales in North Carolina and none of SKI's products have been found here.

On May 30, 2014, Defendant renewed its Motion which has been fully briefed and is ripe for determination.

## II. DISCUSSION

Federal Circuit law governs personal jurisdiction in patent cases. IMO Indus., Inc. v. SEIM S.R.L., 305-CV-420-MU, 2007 WL 1651838, at *1 (W.D.N.C. June 4, 2007) (noting that Federal Circuit law applies in determining personal jurisdiction in patent cases). Plaintiff has the burden of proving personal jurisdiction here. Thomas v. Centennial Commc'ns Corp., 3:05CV495, 2006 WL 6151153, at *2 (W.D.N.C. Dec. 20, 2006).

Plaintiff must show that the exercise of personal jurisdiction over the Defendant complies with the forum state's long-arm statute and the constitutional requirements of due process. Grober v. Mako Products, Inc., 686 F.3d 1335, 1345 (Fed. Cir. 2012), reh'g denied (Sept. 14, 2012). Since North Carolina's long-arm statute extends jurisdiction to the outer boundaries of due process, the jurisdiction analysis merges into a single due process inquiry. Thomas, 2006 WL 6151153, at *2.

To be consistent with the limitations of due process, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts may be established by showing "general" or "specific" jurisdiction. Helicopteres Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

A court may exercise general jurisdiction over a non-resident defendant if the defendant has contacts with the State that are so "continuous and systematic" as to render them "essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).

In the absence of general jurisdiction, a court may exercise specific jurisdiction over the defendant in a cause of action that arises out of the defendant's activities in the forum state. In analyzing specific jurisdiction over a defendant, the Federal Circuit considers whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Grober, 686 F.3d at 1346 (citing Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003)). Plaintiff has the burden of making a prima facie showing of specific jurisdiction by satisfying the first two elements. The burden then shifts to defendant to show that such assertion of personal jurisdiction is not reasonable and fair. Id.

A prima facie case of personal jurisdiction over an alien defendant is made by meeting a "stream of commerce" standard. IMO Industries, Inc., 2007 WL 1651838, at *1 (citing Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994)). This standard requires that (1) the alien defendant placed the accused product into the stream of commerce, (2) the alien defendant knew or should have known the likely destination of the product, and (3) the

alien defendant's conduct and connections with the forum state are such that it may reasonably foresee being haled into court within that forum. Id. See also Freescale Semiconductor, Inc. v. Amtran Tech. Co., No. A-12-CV-644-LY, 2014 WL 1603665, at *5 (W.D. Tex. Mar. 19, 2014) (dismissing the plaintiff's complaint where the defendant "kn[ew], with reasonable certainty, that its [accused products] w[ould] end up in the United States marketplace, including, by inference, in [the forum state]"); Cree, Inc. v. Bridgelux, Inc., No. 1:06CV00761, 2007 WL 3010532, at *6 (M.D.N.C. July 5, 2007) (declining to exercise personal jurisdiction over a "component manufacturer [d]efendant . . . on the sole basis that an item is found [in the forum state] which incorporates [d]efendant's product"); QR Spex, Inc. v. Motorola, Inc., 507 F. Supp. 2d 650, 658 (E.D. Tex. 2007) ("[T]he Court finds that an exercise of personal jurisdiction under the stream-of-commerce theory is only appropriate where the allegedly infringing product reaches the forum.").

"A rational belief that a component or product will eventually end up in a particular state—even if that belief amounts to a substantial certainty—does not, by itself, amount to purposeful conduct nor 'manifest an intention to submit to the power of a sovereign.'" Freescale Semiconductor, Inc., 2014 WL 1603665, at *6 (quoting J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011)).

The test for reasonableness is a "multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996). The Federal Circuit considers five factors in determining whether jurisdiction would be reasonable: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in

obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." Id.

Applying these principles, no basis exists for the exercise of personal jurisdiction over SKI in this forum. There is no dispute that SKI is not subject to general personal jurisdiction. Celgard argues that SKI may be haled into court here pursuant to specific jurisdiction under a stream of commerce theory. Despite being permitted to conduct extensive jurisdictional discovery, Celgard offers no more than it did initially. Even viewing the record entirely in Celgard's favor, there is no indication that SKI has made a sale or even an offer of sale in North Carolina. None of SKI's products have been found in this forum. Even assuming arguendo that an SKI component was found in a product sold in this state, personal jurisdiction would not exist absent some action by SKI directed specifically at North Carolina. Cree, Inc. v. Bridgelux, Inc., No. 1:06CV00761, 2007 WL 3010532, at *6 (M.D.N.C. July 5, 2007) (declining to exercise personal jurisdiction over a "component manufacturer [d]efendant . . . on the sole basis that an item is found [in the forum state] which incorporates [d]efendant's product").

Celgard's alternative theory that SKI is subject to nationwide jurisdiction under Fed. R. Civ. P. 4(k)(2) also fails. Nationwide jurisdiction applies only where, inter alia, the defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction. SKI has consented to jurisdiction in New York based upon its contacts there, including marketing the accused products through its Manhattan-based employee. "[M]eetings which merely create the likelihood of a more solid business relationship are a sufficient basis for the exercise of in personam jurisdiction." Gleason Works v. Klingelnberg-Oerlikon Geartec Vertriebs-GmbH, 58 F.Supp. 2d 47, 51 (W.D.N.Y. 1999) (internal quotation marks and citation omitted).

Celgard could have also brought suit in California. SKI's contacts with that forum include providing samples to California companies on five occasions prior to Celgard's suit, including samples provided to three California companies at a cost of $90,000, $50,000, and $30,000, respectively. Meetings between SKI and Apple occurred at Apple's headquarters in California. Those contacts are sufficient to support personal jurisdiction. See, e.g., Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C., No. C-06-4693 (JCS), 2006 WL 3290416, at *4-5 (N.D. Cal. Nov. 13, 2006) (exercising personal jurisdiction over the defendant where it "actively promot[ed] [its] services and products by maintaining a booth and [the defendant's vice president] distribut[ed] his card at [a] conference"); Elan Microelectronics Corp. v. Pixcir Microelectronics Co. Ltd., No. 2:10-cv-00014-GMN-PAL, 2012 WL 523695, at *6 (D. Nev. Feb. 16, 2012) (finding jurisdiction proper where the defendant's corporate officer attended a trade show in the forum state to promote a prototype of the accused product in an "effort to drum up interest in [the defendant's] technology").

For those reasons, and the other reasons stated in SKI's briefs, the undersigned respectfully recommends that its Motion to Dismiss be granted.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's … Renewed Motion to Dismiss For Lack of Personal Jurisdiction … or, in the Alternative, to Transfer" (document #156) be **GRANTED**, that is, that this matter be **DISMISSED** for lack of personal jurisdiction.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: July 24, 2014

_____
David S. Cayer
United States Magistrate Judge